IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


MICHAEL GILBERT,

                    Plaintiff,

vs.                                    Case No. 10-1050-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

                    Defendant.

MEMORANDUM AND ORDER

     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's decision
to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the
correct legal standards.  <u>Glenn v. Shalala</u>, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by
such evidence that a reasonable mind might accept to support the

1

conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

2

any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On March 31, 2006, administrative law judge (ALJ) William H. Rima III issued his 1st decision (R. at 32-42). On April 4, 2007, the U.S. District Court reversed the decision of the Commissioner and remanded the case for further hearing (R. at 49-66). Plaintiff was found to be disabled as of May 1, 2006 under a subsequent supplemental security income application (R. at 18). The ALJ issued his 2nd decision on August 18, 2008 (R. at 18-26). Plaintiff alleges that he has been disabled since August 27, 2002

(R. at 18). Plaintiff is insured for disability insurance benefits through December 31, 2003 (R. at 20). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability (R. at 20). At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease of the lumbar and cervical spine and post polio syndrome (R. at 20). The ALJ further found at step two that plaintiff's left knee impairment was not severe, and that the existence of a cardiac impairment has not been medically determined (R. at 21). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 21). After determining plaintiff's RFC (R. at 21-22), the ALJ found at step four that plaintiff is unable to perform any past relevant work (R. at 24). At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 25-26). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 26).

**III. Did the ALJ's RFC findings comply with SSR 96-8p?**

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonlexical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered

and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); <u>Nielson v. Sullivan</u>, 992 F.2d 1118, 1120 (10th Cir. 1993). When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonlexical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence. <u>See</u> <u>Southard v. Barnhart</u>, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003). The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. <u>Spicer v. Barnhart</u>, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003). It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions. <u>Cruse v. U.S. Dept. of Health & Human Services</u>, 49 F.3d 614, 618 (10th Cir. 1995). When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the

ALJ's RFC determination. Such bare conclusions are beyond meaningful judicial review. Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

The first issue is in regards to plaintiff's failure to include a limitation on reaching. Dr. Williamson prepared a state agency physical RFC assessment on July 15, 2003 (R. at 349-356). Included in his assessment was an opinion that plaintiff was limited in reaching in all directions, including overhead, on both the left and right side, due to polio syndrome (R. at 352). The ALJ did not include this limitation in his RFC findings. Plaintiff argues that the ALJ erred by failing to explain why he did not include this limitation (Doc. 11 at 23-24).

In regards to the opinions of Dr. Williamson and Dr. Goering, the ALJ stated that he would:

> ...give these opinions substantial weight. They are consistent with the record and well supported. The record supports the residual functional capacity opinion rendered by Dr. Williamson, dated July 15, 2003 (Exhibit 3F), which is identical to the residual functional capacity opinion rendered by Dr. Goering generally limiting the plaintiff to sedentary work (Exhibit 22F).

(R. at 24). The ALJ offered no explanation for not including the limitation on reaching set forth by Dr. Williamson; the ALJ did give "substantial weight" to his opinions and further stated that the record supported his RFC opinions, which included a

limitation on reaching.[1]

The vocational expert (VE) indicated that, based on the hypothetical question, that plaintiff is limited to sedentary work, and specifically identified the jobs of loader (DOT code 726.687-030) and printed circuit board assembly (726.684-110) as jobs that plaintiff could perform (R. at 325-326).  The ALJ limited plaintiff to sedentary work (R. at 21, 25).[2]  The job of loader requires "constant" (over 2/3 of the time) reaching, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO) (U.S. Dept. of Labor, 1993 at 320, C-3), and the job of printed circuit board assembly requires "frequent" (1/3 to 2/3 of the time) reaching.  SCO at 203, C-3.  Thus, a limitation on reaching with both the left and right arm would clearly have an impact on plaintiff's ability to

---

[1]Although Dr. Williamson's July 15, 2003 assessment included a limitation on reaching (R. at 352), Dr. Goering's October 5, 2006 assessment did not include a limitation on reaching (R. at 623).  However, Dr. Williamson's opinion is not the only medical opinion indicating that plaintiff had a limitation on reaching. On March 26, 2008, Dr. Zakahria also opined that plaintiff was limited to occasional reaching (R. at 688-689).  The ALJ never discussed Dr. Zakahria's opinions in his decision.  Defendant acknowledges that Dr. Zakahria provided treatment to the plaintiff in 2004 and 2005 (Doc. 17 at 6).  The issue before the ALJ was whether plaintiff was disabled between August 27, 2002 and May 1, 2006 (R. at 18).

[2]Defendant's brief states that because of a clerical error, the ALJ, in his decision, listed two light jobs (R. at 25) identified by the VE based on an earlier hypothetical question, but meant to list the sedentary jobs identified by the VE (Doc. 17 at 16 n.9).  Plaintiff did not dispute this assertion.  Thus, the court examined the two sedentary jobs identified by the VE.

perform the jobs identified by the VE as jobs that plaintiff could perform.

Defendant's brief provides various arguments that might have supported the ALJ's decision not to include a limitation on reaching (Doc. 17 at 16). However, the ALJ offered no reason for not including a limitation on reaching in his decision. An ALJ's decision should be evaluated based solely on the reasons stated in the decision. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). A decision cannot be affirmed on the basis of appellate counsel's post hoc rationalizations for agency action. Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985). A reviewing court may not create post hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision. Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005). By considering legal or evidentiary matters not considered by the ALJ, a court risks violating the general rule against post hoc justification of administrative action. Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004). Because the ALJ failed to offer any explanation or rationale for not including the limitation on reaching set forth by Dr. Williamson, the court will not consider explanations offered in defendant's brief. The ALJ clearly erred by failing to follow the requirement of SSR 96-8p that if the RFC assessment conflicts with an opinion from a

medical source, the ALJ "must" explain why the opinion was not adopted.

The second issue is in regards to limitations associated with plaintiff's knee. In the ALJ's 1st decision, the ALJ found that plaintiff had a severe knee impairment (R. at 34), and included in his RFC findings that plaintiff is restricted to only occasional left leg pushing and pulling due to chondromalacia of the patella[3] (R. at 37). In his 2nd decision, the ALJ referenced medical evidence that had been in the record at the time of the 1st decision, but concluded that plaintiff's knee impairment was not severe, and that there are "no functional limitations" (R. at 21).

Dr. Estivo, a treating physician, provided a medical source statement-physical dated September 30, 2005 (R. at 374-375). He indicated that he filled out the form based on plaintiff's knee pain (R. at 375). He opined that plaintiff should alternate sitting with standing as needed throughout the day (R. at 374). The ALJ gave "some" weight to his opinions, but stated that:

> Based on the totality of the evidence, it appears that the claimant...does not require the position alternation as recommended by Dr. Estivo.

(R. at 23).

---

[3]The patella is the small bone in the front of the knee, i.e., the kneecap. Webster's New World Medical Dictionary (3rd ed., 2008 at 235).

The ALJ had previously stated that:

> The claimant reported that he can sit for 2
> hours, stand for 2 hours and walk half a
> block.  Industry standards allow employees to
> take a 15 minute break in the morning and
> afternoon with a 30 minute break at midday.
> Thus, by his own account, the claimant is
> able to stand 2 hours in an 8 hour workday
> and sit 6 hours in an 8 hour workday with
> normal breaks...Thus, it is reasonable to
> conclude that the claimant is able to walk 2
> hours in an 8 hour workday.

(R. at 23).

At the hearing on May 1, 2008, plaintiff was asked about the opinion of Dr. Estivo that plaintiff should alternate sitting and standing as needed throughout the day.  The ALJ asked plaintiff how often he would have to alternate sitting and standing between 2002 and 2005 (the date of Dr. Estivo's opinion).  Plaintiff initially responded "every two hours, maybe an hour-and-a-half, somewhere in there" (R. at 765).  The ALJ then asked plaintiff if he would have to alternate sitting and standing "every hour-and-a-half", to which plaintiff responded: "Every hour-and-a-half, yes sir" (R. at 766).

Dr. Winkler, a nonexamining physician, also offered opinions regarding plaintiff's limitations (R. at 499-505).  He opined that plaintiff had numerous limitations, including a limitation in the ability to push/pull with lower extremities, and postural limitations, and indicated that these limitations were specifically due to chondromalacia of the patella (R. at 503).

The ALJ stated that Dr. Winkler's opinions represented an objective and well reasoned explanation of plaintiff's RFC, and were given substantial weight (R. at 24).

Thus, both Dr. Winkler and Dr. Estivo opined that plaintiff had numerous limitations caused by plaintiff's knee impairment. In his 1st decision, the ALJ acknowledged that plaintiff had a severe knee impairment, and included in his RFC a limitation on left leg pushing and pulling due to that impairment. However, in his 2nd decision, and after citing to the same medical evidence before him at the time of the 1st decision, the ALJ decided that plaintiff's knee impairment was not a severe impairment because there were no functional limitations with the knees, even though both Dr. Winkler and Dr. Estivo set forth numerous limitations that plaintiff had because of his knee impairment. The ALJ did not include in plaintiff's RFC findings Dr. Estivo's opinion that plaintiff should alternate sitting and standing as needed throughout the day "based on the totality of the evidence" (R. at 23), nor did he include in his RFC findings plaintiff's testimony that he would have to alternate between sitting and standing every hour-and-a-half. There is no evidence in the record that the jobs identified by the VE could be performed if plaintiff had to alternate between sitting and standing every hour-and-a-half.

SSR 96-9p (implications of a RFC for less than full range of sedentary work) states that the extent of the erosion of the

sedentary base will depend on the frequency of the need to alternate sitting and standing and the length of time needed to stand. 1996 WL 374185 at *7. Precisely how long a claimant can sit, or stand/walk, without a change in position is relevant to assumptions about whether the claimant can perform light or sedentary work. <u>Vail v. Barnhart</u>, 84 Fed. Appx. 1, 5 (10th Cir. Nov. 26, 2003); <u>Armer v. Apfel</u>, 2000 WL 743680 at *2-3 (10th Cir. June 9, 2000).

The court is concerned with the finding of the ALJ in his 2nd decision that plaintiff's knee impairment is not severe and that there are no functional limitations with the knee in light of the fact that the ALJ had previously found plaintiff's knee to be a severe impairment, and in light of the opinions of both Dr. Winkler and Dr. Estivo that plaintiff had numerous limitations caused by plaintiff's knee impairment. Therefore, on remand, the ALJ should determine if plaintiff's knee impairment is a severe impairment, and if so, the impact of that impairment on plaintiff's RFC, including any need for the plaintiff to alternate sitting and standing. Given the fact that the need to alternate sitting and standing could clearly impact the sedentary work base, on remand, the ALJ should either include a limitation on plaintiff's ability to alternate sitting and standing, or provide a reasonable explanation for not including such a limitation in plaintiff's RFC.

Plaintiff asserts that the ALJ erred by failing to include other limitations set forth by various medical sources, including limitations on pushing/pulling with lower extremities, and various environmental limitations. Although these limitations should also be addressed when this case is remanded, the court would note that SSR 96-9p states that limitations or restrictions on the ability to push/pull will generally have little effect on the unskilled sedentary occupational base. 1996 WL 374185 at *6. Furthermore, few occupations in the unskilled sedentary occupational base require work in environments with extreme cold, heat, wetness, humidity, vibration or unusual hazards (including unprotected heights). Even a need to avoid all exposure to these conditions would not, by itself, result in a significant erosion of the sedentary occupational base. 1996 WL 374185 at *9.

**IV. Did the ALJ err by discounting or failing to consider various medical opinions?**

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are generally given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the

14

least weight of all. <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1084 (10th Cir. 2004). When an ALJ rejects a treating physician's opinion, he must articulate specific, legitimate reasons for his decision. If the ALJ intends to rely on a nontreating or examiner's opinion, he must explain the weight he is giving to it. He must also give good reasons in his written decision for the weight he gave to the treating physician's opinion. <u>Hamlin v. Barnhart</u>, 365 F.3d 1208, 1215 (10th Cir. 2004).

Treating source opinions on issues that are reserved to the Commissioner[4] should be carefully considered and must never be ignored, but they are never entitled to controlling weight or special significance. Giving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled. SSR 96-5p, 1996 WL 374183 at *2-3.

The ALJ gave no weight to the opinions of Dr. Schneider, a treatment provider, because he determined that Dr. Schneider's opinions were not well supported or consistent with the evidence (R. at 24). Dr. Schneider offered no explanations for his

---

[4]Issues reserved to the Commissioner include: (1) whether an claimant's impairment meets or is equivalent in severity to a listed impairment, (2) a claimant's RFC, (3) whether a claimant can perform past relevant work, and (4) whether a claimant is disabled. SSR 96-5p, 1996 WL 374183 at *2.

opinions, and those opinions differ from the opinions of other medical sources, including Dr. Estivo, another treatment provider. A treating physician's report may be rejected if it is brief, conclusory, and unsupported by medical evidence. Griner v. Astrue, 281 Fed. Appx. 797, 800 (10th Cir. June 12, 2008); Bernal v. Bowen, 851 F.2d 297, 301 (10th Cir. 1988). The court finds no error by the ALJ in his consideration of the opinions of Dr. Schneider.

Plaintiff asserts that the ALJ erred by failing to consider the opinions of Dr. Lee (Doc. 11 at 19). Opinions from any medical source must be carefully considered and must never be ignored. Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2-3. However, the opinion of Dr. Lee was a review of the opinions of Dr. Goering (R. at 620-629). Dr. Lee affirmed the findings of Dr. Goering, except that Dr. Lee included limitations on concentrated exposure to wetness, vibrations and hazards (R. at 628). The ALJ gave great weight to the opinions of Dr. Goering (R. at 24). Although Dr. Lee set forth further environmental limitations, the court has already noted that environmental limitations impact few jobs in the unskilled sedentary base. Although the opinions of Dr. Lee should be considered when the case is remanded, the court finds no clear error because of the ALJ's failure to reference his opinions.

The ALJ also failed to discuss the medical opinions of Dr.

Zakharia, which are dated March 26, 2008 (R. at 688-689).

Although there may be valid reasons for discounting his opinions,

they should not have been ignored by the ALJ.  On remand, the ALJ

should indicate what weight, if any, he is according to his

opinions, and set forth valid reasons for the weight given to his

opinions.  The issue in this case concerns whether plaintiff was

disabled between August 27, 2002 and May 1, 2006.  Dr. Zakharia's

opinion was prepared two years later, and does not indicate for

what time period plaintiff had the limitations set forth in the

statement.  However, as noted earlier, Dr. Zakharia provided

treatment to the plaintiff in 2004 and 2005.  Furthermore, it

should be noted that medical evidence of a claimant's condition

subsequent to the expiration of his/her insured status is

pertinent or relevant evidence which may disclose the severity

and continuity of impairments existing before the expiration of

the claimant's insured status.  Baca v. Dep't of Health & Human

Services, 5 F.3d 476, 479 (10th Cir. 1993); Basinger v. Heckler,

725 F.2d 1166, 1169 (8th Cir. 1984).  However, it is for the ALJ,

as the trier of fact, to determine what weight should be accorded

to medical opinion evidence subsequent to either the expiration

of a claimant's insured status or an earlier determination of

disability.

**V.  Did the ALJ err by failing to follow the remand instruction**
**of the court?**

In the 1st ALJ decision, despite a diagnosis of post polio syndrome by Dr. Schneider, the ALJ found at step two that the evidence did not establish a medically determinable impairment of post polio syndrome (R. at 36). In the court's decision remanding the case for further hearing, the court held as follows:

> SSR 03-1P states that if the evidence indicates that the diagnosis of postpolio syndrome is "questionable," the agency "will" contact the treating source for clarification. It is clear from the decision that the ALJ found that Dr. Schneider's diagnosis of postpolio syndrome was questionable. Thus, the ALJ failed to comply with the social security ruling, which is binding on ALJs.

(Gilbert v. Astrue, Case No. 06-1230-WEB, R. at 61). The court remanded the case in order for the ALJ to comply with SSR 03-1P.

In the ALJ's 2nd decision, the ALJ found post polio syndrome to be a severe impairment (R. at 20). The ALJ gave great weight to the opinions of Dr. Williamson and Dr. Goering (R. at 24), who both indicated that plaintiff's primary diagnosis was post polio syndrome (R. at 349, 620). Therefore, there was no need to recontact Dr. Schneider since SSR 03-1P only called for the physician to be recontacted if the diagnosis was questionable.

**VI. Did the ALJ err by failing to consider plaintiff's obesity and other impairments?**

Plaintiff alleges that the ALJ failed to consider the

effects of plaintiff' obesity pursuant to SSR 02-1p (Doc. 11 at 24-25). SSR 02-1p is a social security ruling governing the evaluation of obesity. It states that, when assessing RFC, obesity may cause limitations of various functions, including exertional, postural and social functions. Therefore, an assessment should also be made of the effect obesity has upon the claimant's ability to perform routine movement and necessary physical activity within the work environment. Obesity may also affect the claimant's ability to sustain a function over time. In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity. 2002 WL 32255132 at *7. The discussion in the SSR on obesity and RFC concludes by stating that: "As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations." 2002 WL 32255132 at *8.

However, it is not at all clear from the medical records cited to by the plaintiff that a medical source ever diagnosed plaintiff with obesity (R. at 427, 551). Even if such a diagnosis could be ascertained from the records, because of plaintiff's failure to cite to any evidence in the record that his obesity was relevant to his impairments or resulted in greater limitations in his ability to perform work activities, the ALJ did not err by not giving further consideration to plaintiff's obesity. See Callicoatt v. Astrue, 296 Fed. Appx.

700, 702 (10th Cir. Oct. 20, 2008); <u>Briggs v. Astrue</u>, 221 Fed.
Appx. 767, 770-771 (10th Cir. Apr. 9, 2007).

Plaintiff further asserts that the ALJ failed to consider other impairments, including hepatitis C, COPD, and chronic kidney stones when making his RFC findings (Doc. 11 at 25). However, plaintiff did not cite to any medical evidence that these impairments had any impact on plaintiff's RFC.  Absent any such evidence, the court therefore finds no error because the ALJ did not expressly discuss these impairments and their impact on plaintiff's RFC.

## VII.  Did the ALJ err in his consideration of plaintiff's daily activities?

In his decision, the ALJ stated the following in regards to plaintiff's daily activities:

> Further, the claimant's daily activities do
> not support allegations of disabling pain.
> The evidence shows that he carries on with
> many normal activities. The claimant reported
> that he takes care of his daughter half the
> week including helping with schoolwork. The
> claimant prepares meals regularly, does
> laundry and household chores where ever he is
> staying, handles his own finances and shops
> for groceries. He indicated that he watches
> television, reads and likes to go fishing.
> (Exhibit 5E)

(R. at 23).

According to the regulations, activities such as taking care of yourself, household tasks, hobbies, therapy, school

attendance, club activities or social programs are generally not
considered to constitute substantial gainful activity.  20 C.F.R.
§ 404.1572(c) (2010 at 396).  Furthermore, although the nature of
daily activities is one of many factors to be considered by the
ALJ when determining the credibility of testimony regarding pain
or limitations, Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th
Cir. 1993), the ALJ must keep in mind that the sporadic
performance of household tasks or work does not establish that a
person is capable of engaging in substantial gainful activity.
Thompson, 987 F.2d at 1490; see Broadbent v. Harris, 698 F.2d
407, 413 (10th Cir. 1983)(the fact that claimant admitted to
working in his yard, performed a few household tasks, worked on
cars, and took occasional trips was found by the court to be
activities not conducted on a regular basis and did not involve
prolonged physical activity; while this evidence may be
considered along with medical testimony in the determination of
whether a party is entitled to disability benefits, such
diversions do not establish, without more evidence, that a person
is able to engage in substantial gainful activity).  One does not
need to be utterly or totally incapacitated in order to be
disabled.  Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir.
2001); Jones v. Sullivan, 804 F. Supp. 1398, 1405 (D. Kan. 1992).

In the case of Draper v. Barnhart, 425 F.3d 1127, 1130-1131
(8th Cir. 2005), the ALJ noted that the claimant engaged in

household chores, including laundry, grocery shopping, mowing, cooking, mopping and sweeping.  The ALJ concluded that claimant's allegations of disabling pain were inconsistent with her reports of her normal daily activities and were therefore not deemed credible.  The court found that substantial evidence did not support this conclusion, holding as follows:

> **The fact that Draper tries to maintain her home and does her best to engage in ordinary life activities is not inconsistent with her complaints of pain, and in no way directs a finding that she is able to engage in light work**.  As we said in McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc), the test is whether the claimant has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world."  In other words, evidence of performing general housework does not preclude a finding of disability.  In Rainey v. Dep't of Health & Human Servs., 48 F.3d 292, 203 (8th Cir.1995), the claimant washed dishes, did light cooking, read, watched TV, visited with his mother, and drove to shop for groceries.  We noted that these were activities that were not substantial evidence of the ability to do full-time, competitive work. In Baumgarten v. Chater, 75 F.3d 366, 369 (8th Cir.1996), the ALJ pointed to the claimant's daily activities, which included making her bed, preparing food, performing light housekeeping, grocery shopping, and visiting friends.  We found this to be an unpersuasive reason to deny benefits: **"We have repeatedly held...that 'the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work.' "** Id. (quoting Hogg v. Shalala, 45 F.3d 276, 278 (8th Cir.1995)).

Moreover, we have reminded the Commissioner

> **that to find a claimant has the
> residual functional capacity to
> perform a certain type of work, the
> claimant must have the ability to
> perform the requisite acts day in
> and day out, in the sometimes
> competitive and stressful
> conditions in which real people
> work in the real world...The
> ability to do light housework with
> assistance, attend church, or visit
> with friends on the phone does not
> qualify as the ability to do
> substantial gainful activity.**

> Thomas v. Sullivan, 876 F.2d 666, 669 (8th
> Cir.1989) (citations omitted).

Draper, 425 F.3d at 1131 (emphasis added).

Plaintiff's daily activities, which consist of ordinary life activities, as the court found in Draper, do not establish that plaintiff is able to work full time, and are not inconsistent with claims of disabling pain. Therefore, on remand, the ALJ shall make new credibility findings after giving further consideration to some of the medical opinions, as set forth above, and keeping in mind that ordinary life activities do not establish that plaintiff is able to work full time and are not inconsistent with claims of disabling pain.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 7th day of March, 2011, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge